## APPEAL OF CO-OPERATIVE FOUNDRY CO.

Docket No. 2780.   Submitted July 20, 1925.   Decided October 16, 1925.

1. As of January 1, 1917, the taxpayer actually had on hand and used in its business certain property, the rate of depreciation on which was not shown by the evidence and which had been made by it for use in its business and the cost thereof charged to expense when made. *Held*, that in the absence of evidence showing the

cost and depreciation upon such property, it could not be included in invested capital.

2. The fixed assets of the taxpayer in 1911 were appraised and the appraisal showed a value in excess of the cost shown on the books. *Held,* that such excess could not be made the basis of an allowance for invested capital.

3. During 1919 the taxpayer discontinued the use of and destroyed certain property. *Held,* that the loss so sustained could not be deducted in the year 1919, in the absence of proof of the date of acquisition, the probable life, and the cost or value as of March 1, 1913.

*Frank J. Maguire, Esq.,* for the taxpayer.
*Ellis W. Manning, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits taxes for the years 1917, 1918, 1919, and 1920, in the total amount of $38,083.48, as set forth below:

| | |
|---|---:|
| 1917 | $5,324.04 |
| 1918 | 4,192.63 |
| 1919 | 25,129.73 |
| 1920 | 3,437.08 |
| | 38,083.48 |

The deficiency letter from which the appeal is taken is dated January 24, 1925, and asserts deficiencies for the years 1919 and 1920 in the amount of $28,566.81, together with an overassessment of $10,273.03 and a net deficiency of $18,293.78, to which the taxpayer attempts to add deficiencies asserted by the Commissioner prior to June 2, 1924, and against which claims for abatement were filed for the years 1917 and 1918. It does not appear whether the Commissioner has acted upon such claims.

FINDINGS OF FACT.

The taxpayer is a New York corporation with its principal office and place of business at Rochester. It was incorporated in the year 1867 and since that time has been continuously engaged in the manufacture of stoves, furnaces, and ranges. In the manufacture of such products it is necessary to prepare patterns, molds, flasks, and fallow boards for the purpose of making the castings necessary in connection with the manufacture of its products. These patterns, molds, flasks, and fallow boards are standardized in accordance with the regular processes of the taxpayer and are used repeatedly in the castings of its stoves, furnaces, and ranges. Prior to the taxable year 1917, the taxpayer charged all the expense of making molds, flasks and fallow boards to expense of the year in which they

were made, and at the beginning of that year it had on hand a large quantity of such articles. As these articles wore out through use they were replaced or repaired. The cost of replacement or repairs was charged to expense, so that at all times the taxpayer had molds, flasks, and fallow boards in a usable condition.

When the taxpayer's accountants were preparing the income-tax returns for the year 1917, the fact that the cost of molds, flasks, and fallow boards had not been capitalized was discovered. The taxpayer had an inventory made of the articles on hand by Thomas R. Kennedy, who was in charge of pattern work, and Kennedy determined that the actual prime cost, without overhead of the molds, flasks, and fallow boards then on hand, was $100,645.20. The taxpayer thereupon set up on its books $100,000 as the value of such assets, and offset such assets with a credit to its surplus, thereby increasing its invested capital shown by its books by that amount. Thereafter, and in the year 1919, the taxpayer added to the said account an amount of $3,275.15 for further cost of additions to molds, flasks, and fallow boards, and this is the only other entry to the account in question. No depreciation was taken or claimed in any year upon this account except as set forth below.

During the year 1911 the taxpayer caused an appraisal to be made of its plant and other capital assets, not including the above-mentioned molds, flasks, and fallow boards, and the value of land, buildings, and equipment shown on such appraisal was in excess of the value shown on the books in the amount of $79,629.78. This amount was set up as an additional capital account by the taxpayer in the year 1917 and added to its book invested capital.

In the year 1918, pursuant to the request of the War Industries Board, the taxpayer discontinued certain types of stoves and ranges theretofore manufactured. In the year 1919 the taxpayer determined to make such discontinuance permanent, and thereupon destroyed the molds, flasks, and fallow boards theretofore used in connection with the manufacture of discontinued lines. It thereupon claimed a loss on account of such destruction in the amount of $32,395.16, charging such loss against surplus on its books, and took a deduction therefor in its return for the year 1919.

The Commissioner in the audit of the taxpayer's return reduced invested capital by the above amounts of $100,000 and $79,629.78, and disallowed the above-mentioned loss claimed for the year 1919 of $32,395.16.

The Commissioner allowed depreciation upon the physical assets upon the basis of the above-mentioned appraisal, accepting it as the value of such assets on March 1, 1913, as to plant, machinery, and equipment.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The taxpayer claims invested capital upon molds, flasks, and fallow boards in the amount of $100,000, invested capital upon other tangible assets in excess of original book value in the amount of $79,629.78, and a loss on account of the destruction of molds, flasks, and fallow boards of $32,395.16.

It is manifest, and is practically conceded by the taxpayer, that the item of $79,629.78 can not, under the facts available, be included in invested capital. The taxpayer claims, and it may be a fact, that substantial items of betterments in the years prior to 1911 were charged to expense, and that this practice resulted in the understatement of the assets of the taxpayer. There is no evidence as to costs of such asssets nor as to their depreciation after acquisition. The appraisal of 1911, while useful for the purpose of determining the actual assets on hand and accepted by the Commissioner for that purpose, is wholly useless for the purpose of determining invested capital.

In respect of the item of $100,000 as entered upon the books of the taxpayer, or $100,645.20, a somewhat different situation is presented. The taxpayer has introduced evidence to the effect that on January 1, 1917, an actual examination of its records disclosed that the molds, flasks, and fallow boards then on hand had cost the amount stated. Standing alone this would indicate that expenses in earlier years had been understated by this amount, and that earnings were actually to January 1, 1917, in excess of the amounts previously computed, thus giving rise to an earned surplus properly to be included in invested capital. But the taxpayer contented itself with submitting merely evidence of one witness to the ultimate fact as above set forth. We are not advised as to the manner in which the computation was made, nor the age of the articles in question. We do know that all of Kennedy's department was engaged continuously in the pattern work. We do know that the taxpayer continuously before 1917, and with a minor departure in 1919, and continuously since that time, has charged all of that work to expense. No evidence was introduced as to the actual life of a pattern, a mold, a flask, or a fallow board. The taxpayer contents itself with the mere argument that these articles are the subject of constant replacement and repair, and are at all times kept in an efficient condition. Such an argument would apply equally to any other tangible property, no matter how ephemeral its life

in the business. It would apply to the pencils of the stenographer as well as to her typewriter, although one is a well-recognized expense, and the other a capital asset. If the taxpayer had an actual capital asset with an appreciable life as it claims, and had records extending back to 1909 of the actual construction of such assets and their cost, it was in a position to set up records showing construction from year to year, to estimate the life of the molds, flasks, and fallow boards constructed, to depreciate them over that life, and to set up the replacements if any from time to time. The taxpayer has done none of these things, but asks the Board to accept a mere conclusion that these assets had a substantial life based on a mere argumentative claim that they are constantly replaced and kept in an efficient working condition. We consider that the evidence is insufficient to establish that the assets so claimed were of such a substantial character as to require capitalization in view of the consistent policy followed by the taxpayer both before and after 1917. The Commissioner must, therefore, be sustained upon this point.

As to the claimed deduction of $32,395.16, it was conceded by both the taxpayer and the Commissioner that, if the item of $100,645.20 were excluded from invested capital, the deduction should also be disallowed, both parties overlooking the fact that if the taxpayer had on March 1, 1913, property of that value which was scrapped subsequent to that date, a deductible loss would arise. The taxpayer, as above set forth, produced no testimony as to the time when the molds, flasks, and fallow boards scrapped in 1919 were made, nor the cost when so made. We do not know whether they were deducted as an expense in years prior to 1919, but, in the light of the other evidence, the presumption is that this occurred. Such being the case, we are of the opinion that the Commissioner was correct in disallowing this deduction, and his determination in that respect is also approved.

ARUNDELL not participating.